**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR ALPHA BANK & TRUST, | : : : : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 1:11-CV-03423-RWS |
| JAMES A. BLACKWELL, JR., JOSEPH L. BRINER (nominally, to extent of Insurance policy coverage only), DAN E. BURGE, CLAUD E. CLARK, THOMAS D. DANIEL, ROBERT E. GARRISON, BARRY E. MANSELL, JACK V. MILLER, JAYANTILAL K. PATEL, ROBERT E. SKEEN, III, and D. MICHAEL SLEETH, | : : : : : : : : : : : : | |
| Defendants. | : | |

## **ORDER**

This case comes before the Court on Defendants' Rule 12(b)(6) Motion to Dismiss [24], Plaintiff's Motion for Oral Argument or, Alternatively, for Leave to File Supplemental Brief in Opposition to Motion to Dismiss the Complaint [35] and, finally, Plaintiff's Combined Motion to Stay Proceedings

Pending Mediation, and To Shorten Time for Response [37]. After reviewing the record, the Court enters the following Order.

As a preliminary matter, the Court has been advised that the parties have undergone mediation and were unable to resolve their dispute. Plaintiff's Motion to Stay Proceedings Pending Mediation, and To Shorten Time for Response [37] therefore is **DENIED as moot**. Additionally, Plaintiff's Motion for Oral Argument or, Alternatively, for Leave to File Supplemental Brief in Opposition to Motion to Dismiss the Complaint [35] is **DENIED**. The Court has reviewed the motion and finds that neither oral argument nor a supplemental brief would aid the Court in resolving this matter.

## Background[1]

Plaintiff the Federal Deposit Insurance Corporation (the "FDIC"), in its capacity as Receiver for Alpha Bank & Trust of Alpharetta, Georgia (the "Bank") filed this action, seeking to recover $23.92 million in losses resulting from thirteen loans ("the Loss Loans" or "Loans") approved by the Bank between June 20, 2006 and June 6, 2008. (Compl., Dkt. [1] ¶¶ 1-3.)

---

[1] The Court accepts the facts alleged in the Complaint as true for purposes of considering Defendants' Motion to Dismiss. Cooper v. Pate, 378 U.S. 546, 546 (1964).

2

Defendants are eleven former officers and/or directors of the Bank, eight of whom were also members of the Bank's Directors Loan Committee ("DLC"), alleged to have approved some or all of the Loss Loans. (Id. ¶¶ 5, 11-21.) The facts relevant to the Loans are as follows:

The Bank opened to the public on May 8, 2006 and maintained its principal place of business in Alpharetta, Georgia; it was closed by the Georgia Department of Banking & Finance ("GDBF") on October 24, 2008, less than thirty months after it opened. (Id. ¶¶ 1, 22.) The Director Defendants and each member of the DLC were responsible for "analyzing loan applications and supporting documents to ensure that loans were properly documented and otherwise satisfied the Bank's lending policies as well as prudent lending practices." (Id. ¶ 23.) The Director Defendants also were responsible for "selecting, monitoring, and evaluating management; establishing business strategies and policies; monitoring and assessing the Bank's business operations; establishing and monitoring adherence policies and procedures required by statute, regulation, and principles of safety and soundness; following and implementing the advice of regulators; reviewing and approving the actions of the DLC, including but not limited to, the DLC's actions in

3

approving loans; and making business decisions on the basis of fully informed and meaningful deliberation." (Id. ¶ 24.)

From the time of its inception in 2006, the Bank pursued aggressive growth in the Acquisition, Development and Construction ("ADC") and Commercial Real Estate ("CRE") loan portfolio. (Id. ¶ 29.) This focus on portfolio growth led the Bank to "ignore, disregard or even reject the advice of regulators and third-party consultants who uniformly cautioned against, then criticized, the Bank's strategy." (Id. ¶ 47.) For example, in its 2006 Report of Examination ("RoE"), the GDBF "pointedly questioned the Bank's high credit concentrations in CRE and warned that the Bank should be careful in loan underwriting and administration." (Id.) The FDIC echoed these concerns in its 2007 RoE, directing the Bank to "strengthen its credit risk analysis and administration procedures and to address the still-increasing concentration in CRE/ADC lending." (Id. ¶ 49.) Finally, Credit & Compliance Financial Resources, Inc. ("CCFR"), a third-party consultant hired by the Bank to review its portfolio and compliance procedures, "found that 68 percent of the [Bank's] loans contained documentation failures, and advised the Bank to review and tighten its underwriting criteria and policies." (Id. ¶ 50.) Despite these

4

warnings, the Bank increased its ADC/CRE concentration and lending growth and made no "material updates to its Loan Policy to improve or strengthen its underwriting . . . ." (Id. ¶¶ 48, 50.)

Defendants approved the thirteen Loss Loans pursuant to the Bank's "aggressive growth strategy" discussed above. (Id. ¶ 4.) Each of the Loss Loans contained multiple violations of the Bank's Loan Policy. (Id. ¶ 32.) In particular, the FDIC alleges that each Loan was approved notwithstanding "inadequate, incomplete, or outdated financials of the borrowers and/or guarantors, resulting in loans advanced to borrowers with no apparent ability to repay or otherwise service the loans." (Id. ¶ 34.) "In eleven of the Loss Loans, collateral appraisals were either not performed or were performed and accepted based upon improper criteria such as 'as-developed' rather than 'as-is' value." (Id. ¶ 35.) In six of the Loans, the collateral pledged in support of the loan was "unverified, plainly inadequate, or not secured by proper descriptions or agreements" (id. ¶ 36), and in six of the Loans, "the loan amounts exceeded the Bank's approved Loan-to-Value ('LTV') or Loan-to-Cost ('LTC') ratios" (id. ¶ 37). The FDIC alleges that each of these deficiencies was or should have been

5

"readily apparent" to Defendants and that, notwithstanding the deficiencies, each Defendant voted to approve at least two of the Loss Loans. (Id. ¶¶ 32-33.)

As stated above, the Bank was closed by the GDBF in 2008, resulting in $214.5 million in losses to the Deposit Insurance Fund, $23.92 million of which was caused by the Loss Loans. (Id. ¶¶ 1-2.) The FDIC thus filed the instant Complaint, alleging, in two Counts, that Defendants were negligent and grossly negligent in approving the Loss Loans. (See generally Compl., Dkt. [1].) Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (See generally Defs.' Br. in Supp. of Rule 12(b)(6) Mot. to Dismiss ("Defs.' Br."), Dkt. [24-1].) Defendants argue that the FDIC's claim for ordinary negligence fails as a matter of law in light of Georgia's business judgment rule (id. at 9-14) and that the FDIC has failed to allege sufficient facts to show gross negligence on the part of Defendants (id. at 14-18).[2] The Court

---

[2] Defendants also argue that the FDIC's claims fail as to Defendants Blackwell and Garrison and fail in part as to Defendant Mansell, as (1) Blackwell was never a member of the DLC; (2) Garrison joined the DLC after the Loans at issue were approved; and (3) Mansell joined the DLC after eight of the Loans already had been made. (Defs.' Br., Dkt. [24-1] at 18-20.)

6

sets out the legal standard governing a Rule 12(b)(6) motion to dismiss before considering these arguments.

## Discussion

### I. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273

7

n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**II. Analysis**

As stated above, the FDIC has filed a two-count Complaint against Defendants, alleging they were negligent (Count I) and grossly negligent (Count II) in approving the Loss Loans. (See generally Dkt. [1].) Defendants argue that the Count I claim for negligence is barred as a matter of law by Georgia's business judgment rule and that the FDIC has failed to allege sufficient facts to support its claim for gross negligence, set out in Count II. (See generally Defs.' Br., Dkt. [24-1].) Utilizing the standard set out in Part I., supra, the Court considers these arguments, in turn.

A. Negligence (Count I)

In Count I of the Complaint, the FDIC alleges that Defendants were negligent in approving the Loss Loans. (Dkt. [1] ¶¶ 55-65.) In support of this claim, the FDIC alleges, among other things, that Defendants "failed to adhere

8

to lending policies . . . and sound lending practices," "rejected or disregarded the advice of third parties and regulators designed to assist them in their decision-making," and "were aware, or in the exercise of reasonable diligence should have been aware, of significant weaknesses in the Bank's underwriting practices and procedures." (Id. ¶¶ 58-60.) The FDIC further alleges that Defendants were aware, or should have been aware, that the Bank's loan portfolio was deteriorating as a result of imprudent CRE and ADC lending, and that the high risk CRE and ADC loans were having an adverse impact on the Bank's earnings, liquidity and capital-to-asset ratio. (Id. ¶¶ 61-62.) Finally, the FDIC alleges that Defendants were aware, or should have been aware, of "the deficiencies in underwriting and loan support exhibited by the Loss Loans" but approved the Loss Loans nonetheless. (Id. ¶ 63.)

Defendants argue that the FDIC's claim for negligence fails as a matter of law in light of Georgia's business judgment rule. (Defs.' Br., Dkt. [24-1] at 10-14.) Under Georgia law, "[d]irectors and officers of a bank or trust company shall discharge the duties of their respective positions in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances." O.C.G.A. § 7-1-490(a). The Court agrees with

9

the FDIC that this provision imposes on officers and directors an ordinary negligence standard of care. See also, O.C.G.A. § 51-1-2 ("In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. . . . The absence of such diligence is termed ordinary negligence.").

However, "[i]n determining whether a corporate officer or director has fulfilled his or her statutory duty, Georgia courts apply the business judgment rule." Brock Built, LLC v. Blake, 686 S.E.2d 425, 430 (Ga. Ct. App. 2009). "The business judgment rule affords an officer the presumption that he or she acted in good faith, and *absolves the officer of personal liability unless it is established that he or she engaged in fraud, bad faith or an abuse of discretion*[.]" Id. (emphasis added). In other words, the business judgment rule "forecloses liability in officers and directors for ordinary negligence in discharging their duties." Flexible Prods. Co. v. Ervast, 643 S.E.2d 560, 564 (Ga. Ct. App. 2007); see also id. at 565 (noting "officers and directors are protected from liability for ordinary negligence" under business judgment rule); Brock Built, 686 S.E.2d at 430 ("Allegations amounting to mere negligence, carelessness, or lackadaisical performance are insufficient as a matter of law [to

10

rebut the business judgment rule]."). In accordance with the foregoing authority, the Court finds the FDIC's negligence claim is foreclosed by the business judgment rule and therefore fails as a matter of law. Defendants' Motion to Dismiss therefore is due to be GRANTED with respect to Count I.

### B. Gross Negligence

In Count II of the Complaint, the FDIC alleges that Defendants' approval of the loss loans also constituted gross negligence. (Dkt. [1] ¶¶ 66-77.) Defendants argue that this claim must be dismissed because the allegations of the Complaint show that Defendants followed the Bank's established procedures for loan approval, thus precluding a claim for gross negligence:

> The FDIC-R's Complaint in this case is completely devoid of any allegations that the Defendants failed to engage in the proper process for approving the loans in question. To the contrary, the allegations of the Complaint show that there was an established process that was followed. There was a Directors Loan Committee (Complaint, ¶ 12), and it was responsible for the overall credit function of the Bank (Complaint, ¶ 13). There was a written Loan Policy (Complaint, ¶ 30), and Directors reviewed and voted on the Loans (Complaint, ¶ 32). The Complaint cites loan deficiencies (Complaint, ¶ 38), but it does not allege that the Defendants either ignored the process or engaged in the process in bad faith. Given that there is no allegation that Defendants acted in a manner that ignored the process, the FDIC-R's gross negligence claim must be dismissed.

11

(Defs.' Br., Dkt. [24-1] at 17.)  This argument is without merit.

As a threshold matter, the Complaint plainly alleges that the established procedure for loan approval *was* ignored by Defendants: the FDIC alleges that each of the Loss Loans contained multiple violations of the Bank's Loan Policy, which violations were readily apparent, and that, notwithstanding these violations, each Defendant voted to approve at least two of the Loans. Defendants' argument thus fails from a factual perspective.

From a legal standpoint, the argument is similarly unavailing.  Under Georgia law, "'gross negligence' is defined as the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise." Morgan v. Horton, 707 S.E.2d 144, 150 (Ga. Ct. App. 2011) (internal quotation marks and citations omitted). Defendants point to no Georgia authority to support their contention that officers and directors are immune from liability for gross negligence in their decision-making so long as that decision-making follows an established process.  (And, as stated above, the Complaint alleges that Defendants, in fact, did not follow established Bank procedure in approving the Loans.)

12

Furthermore, whether conduct alleged amounts to gross negligence is, as a general rule, a question to be resolved by the jury and not by the Court as a matter of law:

> Generally, when facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable people as to whether or not negligence can be inferred, and, if so, whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury. . . . In cases wherein the evidence allegedly supporting the accusations of gross negligence is plain and indisputable, however, the court may resolve the question of whether the defendant acted with gross negligence as a matter of law.

Id. at 151 (internal citations omitted). In this case, the Court finds that a reasonable person could conclude, based on the facts alleged, that Defendants were grossly negligent in approving the Loss Loans. Accordingly, the Court cannot find as a matter of law that the allegations of the Complaint do not support a finding of gross negligence on the part of Defendants. Defendants' Motion to Dismiss therefore is due to be DENIED with respect to Count II.[3]

---

[3] As stated in footnote 2, supra, Defendants also argue that the Complaint fails as to Defendants Blackwell and Garrison and fails in part as to Defendant Mansell due to these Defendants' lack of membership or limited membership on the DLC. (Defs.' Br., Dkt. [24-1] at 18-20.) This argument fails, as the allegations of the Complaint–taken as true–show that each Defendant approved at least two of the Loss Loans, regardless of whether he or she served on the DLC.

13

## Conclusion

In accordance with the foregoing, Defendants' Rule 12(b)(6) Motion to Dismiss the Complaint [24] is **GRANTED in part and DENIED in part**. It is **GRANTED** with respect to the FDIC's claim for negligence set out in Count I and **DENIED** with respect to the claim for gross negligence set out in Count II.

**SO ORDERED**, this  3rd  day of August, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)